THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ERNESTO RUBIO, Defendant and Appellant.

No. 7172. Argued June 22, 1938.—Decided July 14, 1938.

*Luis Mercader* for appellant.  R. A. Gómez, *Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

In this case the district attorney filed an information against Ernesto Rubio and Lupercio Pagán Pabón, for keeping for sale cow's milk adulterated with water added artificially to be used for human consumption (Act No. 77 of 1925; Session Laws, p. 558).

On the day of the trial Lupercio Pagán pleaded guilty and the court fined him $25.  Ernesto Rubio pleaded not guilty and the court heard the evidence.

The first witness for the prosecution, Víctor Manuel Saavedra, Health Inspector, stated, in brief:  That on March 17, at 2:30 p. m., on La Palma Street in Arecibo, he found a milk wagon labeled "Dairy of Ernesto Rubio," that it had no license number because Ernesto Rubio had applied for a license but it had not yet been issued; that the said milk wagon was driven by Lupercio Pagán; that the milk was in various containers; that they took several samples and one was found to be adulterated; that the jars were closed with locks; that the employee had the keys in his pocket and opened the containers; that the said Lupercio Pagán worked for Ernesto Rubio; that he knows Ernesto Rubio and that the latter has been engaged for some time in the milk business; that the witness had often taken samples of his milk and that he knows of no previous criminal proceedings against him.

Luis M. Guillermety, Chemist of the Insular Department of Health and a witness for the prosecution, testified that the sample of milk marked "VMS 1137" contained approximately 45 per cent of water added artificially.

The evidence of the defense was limited to the testimony of the defendant.  On direct examination Ernesto Rubio testified:  That Lupercio Pagán had been his employee; that

he has had a milk business since his arrival in Arecibo, and that he previously had one in Aguadilla; that he has been dealing in milk for more than 25 years; that he was notified that the samples had been taken from Lupercio Pagán; that he went to the Department of Health where he was informed that it was customary for them to take samples every week; that when they saw the wagon on the street they told him that they were going to open the containers to take samples; that then the boy took the keys from his pocket and opened the locks; that Lupercio Pagán Pabón was not authorized to carry the keys to the containers, some of which were kept by the defendant in the stable and others by the customers; that once the containers were closed in the stable the keys were put away and then the driver delivered the milk to the customers, who had corresponding keys; that the driver should not have had them; that he had never authorized Lupercio to take them; that they took the samples of his milk every week and they had never shown adulteration; that this system of locks was imposed by the Department of Health to avoid the adulteration on the road and to protect the owner of the stable; that he was never present when milking was going on; that he had given orders to the milker to keep the keys in the stable.

This was the evidence which the District Court of Arecibo had before it when it pronounced judgment finding the defendant guilty of adulterating milk and imposing on him a fine of $25 and costs.

The appellant assigns a single error to the lower court, to wit: That the court, according to the defendant, when pronouncing judgment, stated that although it was morally certain that the defendant was not capable of having adulterated the milk, the evidence, nevertheless, showed that he kept adulterated milk for sale.

We have examined the entire record of this case and it does not show that the court made such a statement; but assuming that it had done so, the evidence before the court

*a quo* did not permit any other conclusion than the one it reached in its judgment.

There is no dispute whatever about the facts that the defendant was the owner of the dairy from which the milk came, that it had been adulterated, that it was sold for human consumption, and that the co-defendant, Lupercio Pagán Pabón, was his employee. The fact that Pagán, disobeying the instructions of his employer, had the keys with him or that the milk might have been adulterated by Pagán himself or by some other employee of the dairy before the containers were locked, does not in any way alter the liability of the defendant.

In the case of *People* v. *Morales,* 47 P.R.R. 721, 722, the facts were more favorable to the appellant than those of the instant case, yet this court affirmed the judgment against the owner of the milk station in spite of the fact that it was proved that the employee and not the owner had adulterated the milk. We quote from the *Morales* case, *supra:*

"Roque confessed his crime. Morales denied the information and after a trial, the court convicted him and imposed on him a thirty-five dollars fine. Feeling aggrieved, he appealed.

"He assigns in his brief the commission of four errors involving the same question, to wit: his erroneous conviction on the ground that it had been proved that he kept for sale and did sell as pure and for human consumption adulterated cow's milk.

"The following are admitted facts: that on May 11, 1933, the defendant Morales was the owner of a milkstand in Caguas; that Roque, the other defendant, was a milkman who delivered the milk of Morales; and that on said date adulterated cow's milk which he sold for public consumption, was seized from a can of Morales. *And it is a question already decided in the affirmative by this court that in a case of this character, both the owner of the milkstand and his agent may be convicted of the offense."* (Italics ours.)

Public health requires that milk, the principal food of humanity, be not adulterated. Generally, dealers in milk avail themselves of helpers who are the ones who come into direct contact with the product. Consequently, for the pur-

poses of avoiding adulteration, it is necessary to prevent its being effected either directly by the owner of the business, or through his agents or employees, and the only way to attain this end is by holding the owner responsible in both cases, since he will then not only refrain from adulteration himself, but he will also take good care to surround himself with honest helpers who are incapable of violating the law. That is why the law is so drastic in these cases.

The judgment appealed from must be affirmed.